UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                                              Chapter 7

ALLOU DISTRIBUTORS, INC., et al.,                   Case No. 03-82321-ess
                                                                    (Substantively Consolidated)

                                 Debtors.
---------------------------------------------------------x
KENNETH P. SILVERMAN, ESQ., as Chapter
7 Trustee of Allou Distributors, Inc., et al.,

                                 Plaintiff,

           -against-                                          Adv. Pro. No. 05-8219-ess

SOUND AROUND, INC.,

                                 Defendant.
---------------------------------------------------------x


**MEMORANDUM DECISION DENYING THE DEFENDANT'S MOTION FOR
JUDGMENT DISMISSING ACTION**


Appearances:

Ronald J Friedman, Esq                          Stuart A. Blander, Esq.
David J. Mahoney, Esq.                          Heller, Horowitz & Feit, P.C.
Silverman & Acampora LLP                    292 Madison Avenue
100 Jericho Quadrangle                          New York, NY 10017
Jericho, NY 11753                                  Attorneys for Sound Around, Inc.
Attorneys for Kenneth P. Silverman, Esq.,
   as Chapter 7 Trustee

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Amended Motion for Judgment Dismissing Action (the "Amended Motion to Dismiss") (Docket No. 30), accompanied by an Amended Memorandum of Law in Support of Motion for Judgment Dismissing Action (the "Amended Mem. in Supp.") (Docket No. 30), brought by Sound Around, Inc. ("Sound Around") for a judgment dismissing the Amended Complaint dated August 26, 2005 (the "Amended Complaint") (Docket No. 14), brought by the Chapter 7 Trustee (the "Trustee") in the above-captioned adversary proceeding (the "Adversary Proceeding").

By his Amended Complaint, the Trustee alleges that the substantively consolidated estates of Allou Distributors, Inc. ("ADI") and related entities (the "Debtors") did not receive fair consideration when they transferred $149,945.00 to Sound Around (the "Transfer"), and that Sound Around intentionally aided a scheme to defraud the Debtors' creditors. Amended Complaint ¶¶ 43-45. The Amended Complaint pleads causes of action for actual fraud pursuant to the New York Debtor and Creditor Law (the "DCL") § 276, constructive fraud pursuant to DCL §§ 273, 274, and 275, and unjust enrichment. Amended Complaint ¶ 1.

Sound Around brings its Amended Motion to Dismiss pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to the Adversary Proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. Amended Mem. in Supp. at 1. Sound Around argues that the Trustee does not have standing to bring this Adversary Proceeding pursuant to Section 544(b) of Title 11 of the United States Code (the "Bankruptcy Code"). Amended Mem. in Supp. at 2, 9.

**Jurisdiction**

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1).  This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(H).  The following constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rule 7052.

**Background**

*The Debtors' Bankruptcy Cases*

On April 9, 2003 (the "Petition Date"), involuntary Chapter 11 petitions were filed against ADI and three of its affiliates, M. Sobol, Inc., Direct Fragrances, Inc., and Standford Personal Care, Inc. (the "Original Debtors").  Case No. 03-82321, Docket No.1; Amended Complaint ¶ 7.  The Original Debtors consented to the entry of orders for relief under Chapter 11, and on April 10, 2003, the Court issued orders for relief in each of the Original Debtors' Chapter 11 cases.  Case No. 03-82321, Docket Nos. 3, 4.

On April 18, 2003, involuntary Chapter 11 petitions were filed against two ADI affiliates, Trans World Grocers Inc. ("Trans World") and Rona Beauty Supplies, Inc. ("Rona Beauty").  Case No. 03-82660, Docket No.1, Case No. 03-82661, Docket No. 1.  On May 1, 2003, the Court entered orders for relief in the Chapter 11 cases of Trans World and Rona Beauty (the "Subsequent Debtors").  Case No. 03-82660, Docket No. 9, Case No. 03-82661, Docket No. 9.

On April 25, 2003, voluntary Chapter 11 petitions were filed on behalf of four ADI subsidiaries, Core Marketing, Inc., HBA Distributors, Inc., HBA National Sales Corp., and Pastel Cosmetic & Beauty Aids, Inc. Case No. 03-82838, Docket No. 1, Case No. 03-82840, Docket No. 1, Case No. 03-82841, Docket No. 1, Case No. 03-82839, Docket No. 1.  On July 11,

2003, Allou Healthcare Inc., a direct or indirect parent company of the Debtors, consented to the entry of an order for relief under Chapter 11 and the joint administration of its case with those of the Original Debtors and Subsequent Debtors. Amended Complaint ¶¶ 6, 12; Case No. 03-82662, Docket No. 62.

By order dated September 16, 2003, the Debtors' Chapter 11 cases were converted to liquidation cases under Chapter 7 of the Bankruptcy Code. Case No. 03-82321, Docket No. 583. Kenneth P. Silverman was appointed as the Chapter 7 trustee in these cases. *Id*. The Debtors' cases were substantively consolidated by order dated December 22, 2003. Case No. 03-82321, Docket No. 923.

*The Debtors' Principals*

Victor Jacobs, and his sons, Herman Jacobs and Jacob Jacobs (the "Jacobs"), held approximately 61 percent of the voting stock of AHI. Amended Complaint ¶ 16. The Jacobs held various positions as officers of the Debtors and were controlling shareholders of the Debtors at all relevant times. Amended Complaint ¶ 16. On June 30, 2003, involuntary Chapter 7 bankruptcy petitions were filed against Victor Jacobs, Herman Jacobs, and Jacob Jacobs. Amended Complaint ¶ 20. Orders for relief were entered on September 9, 2003, and Allan B. Mendelsohn was appointed as the Chapter 7 trustee in these cases. Amended Complaint ¶ 20.

*Procedural History*

The Plaintiffs commenced this Adversary Proceeding on March 16, 2005, by filing a complaint (the "Complaint") against Sound Around stating causes of action for actual fraud under DCL § 276 as well as interest and attorneys' fees under DCL § 276-a, constructive fraud under DCL §§ 273, 274, and 275, and unjust enrichment, and seeking actual and punitive damages. Docket No. 1 at 8-9. On April 18, 2005, Sound Around filed a Motion to Dismiss

Complaint (the "Original Motion to Dismiss") on grounds that the Complaint did not satisfy the pleading requirements of Rules 9(b) and 8(a) of the Federal Rules of Civil Procedure.  Docket No. 5 at 3-6.

On July 28, 2005, former Judge Melanie Cyganowski issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint and for Other Relief which granted the Original Motion to Dismiss in part and dismissed without prejudice the Trustee's cause of action for actual fraud under DCL 276 and the Trustee's request for punitive damages (the "July 28, 2005, Order").  Docket No. 13 at 2.  Judge Cyganowski denied the Original Motion to Dismiss with respect to the Trustee's causes of action for constructive fraud under DCL 273, 274, and 275 and for unjust enrichment.  July 28, 2005, Order at 2.  The Trustee was granted leave to replead and, on August 26, 2005, the Trustee filed the Amended Complaint alleging the same causes of action but without a request for punitive damages.  July 28, 2005, Order at 2; Amended Complaint at 11.

On September 26, 2005, Sound Around filed an answer to the Amended Complaint (the "Answer") denying many of the allegations made in the Amended Complaint and stating as an affirmative defense that Sound Around acted in good faith and provided fair consideration to the Debtors for any funds received.  Docket No. 15 at 1-2.

On November 19, 2007, the Court issued a pre-trial Order setting a trial date for January 14, 2008.  Docket No. 23.  On January 3, 2008, the Trustee and Sound Around filed a Joint Pretrial Memorandum (the "Joint Pretrial Mem.").  Docket No. 24.

This matter was tried to the Court beginning on January 14, 2008.  Docket Entry dated January 14, 2008.  The Trustee withdrew with prejudice his claim for actual fraud under DCL § 276, and his requests for interest and attorneys' fees under DCL § 276-a.  Docket Entry dated

4

January 14, 2008; Docket No. 42 (January 14, 2008, Trial Transcript) at 6:1-14.  At the close of

the Trustee's case, Sound Around made an oral motion for judgment dismissing the Adversary

Proceeding on grounds that the Trustee lacks standing under Section 544 of the Bankruptcy

Code.  Docket Entry dated January 14, 2008; Docket No. 42 (January 14, 2008, Trial Transcript)

at 152:10-24, 153:1-9.

The trial continued on February 6, 2008.  Docket Entry dated February 6, 2008.  The

Trustee was permitted to reopen his case in chief, with the consent of Sound Around, to

introduce evidence on his standing to bring his claims.  Docket No. 29 (February 6, 2008, Trial

Transcript) at 5:8-24, 8:11-12.  *See* Docket No. 27 (letter dated January 31, 2008, from Sound

Around to the Court).  The Trustee introduced into evidence an affidavit of Timothy M. Puopolo

(the "Puopolo Affidavit").  Docket No. 29 (February 6, 2008, Trial Transcript) at 8:18-24.  *See*

Docket No. 28, Exh. B (Puopolo Affidavit).

On February 26, 2008, Sound Around filed a Motion for Judgment Dismissing Action

and Affidavit of Stuart A. Blander, Esq., arguing that this action should be dismissed because the

Trustee did not demonstrate that he has standing to bring this action.  Docket No. 28.  On

February 29, 2008, Sound Around filed the Amended Motion to Dismiss.  On March 17, 2008,

the Trustee filed a Memorandum of Law in Opposition to the Amended Motion to Dismiss (the

"Trustee's Mem.").  Docket No. 32.  On March 24, 2008, Sound Around filed a Reply

Memorandum of Law in Further Support of the Amended Motion to Dismiss (the "Reply

Mem.").  Docket No. 33.

The trial continued on April 14, 2008.  Docket Entry dated April 14, 2008.  Hearings and

conferences were held on the Amended Motion to Dismiss, and the matter was submitted for

decision on July 23, 2008.  Docket Entries dated May 15, 2008, May 28, 2008, June 4, 2008,

June 24, 2008, July 23, 2008.

*Factual Background*

The following facts are undisputed.  As the parties stipulate in the Joint Pretrial Memorandum:

1.    On or about June 15, 1999, the Debtors transferred $149,945.00 (the "Transfer") to Sound Around.

2.    The Transfer constituted a transfer of the Debtors' interest in property.

3.    The Debtors were insolvent at the time of the Transfer.

4.    At the time of the Transfer, the Debtors were engaged in a business or transaction for which the property remaining in its possession after the conveyance was unreasonably small capital.

5.    At the time of the Transfer, the Debtors had incurred debts beyond its ability to pay them as they matured.

6.    No portion of the Transfer was returned to the Debtors or anyone associated with the Debtors, including any member of the Jacobs family.

7.    Zigmund Brach had no "personal" or "business" ties to any member of the Jacobs family.

Joint Pretrial Mem. ¶¶ 1-7.  It is similarly undisputed that the Transfer occurred on June 15, 1999 (the "Transfer Date"), that it is reflected in an invoice, and that it was made by check.  Amended Complaint ¶ 29, Answer ¶ 3; Amended Complaint ¶ 36, Answer ¶ 6.

The existence of certain creditors at the time of the Transfer is also uncontested.  As the Puopolo Affidavit states, European Designer Fragrances ("EDF"), East Coast Cosmetics ("ECC"), and Sterling International Mercantile ("Sterling") (the "Proffered Creditors") shipped goods to the Debtors, in satisfaction of accounts payable packets made by the Debtors, which the Debtors received on May 24, 1999, June 7, 1999, and June 8, 1999, respectively.  Docket No. 28, Exh. B (Puopolo Affidavit) ¶¶ 2, 7, 13, 18, 24, 29.  The Puopolo Affidavit further states that after

6

the Transfer Date, the Proffered Creditors received payment from the Debtors on June 21, 1999, July 3, 1999, and June 25, 1999, respectively.  Docket No. 28, Exh. B (Puopolo Affidavit) ¶¶ 8, 19, 30.

The record shows that ECC filed a timely proof of claim dated June 2, 2003, for an unsecured nonpriority claim in the amount of $70,969.00, for transactions between January 2003 and March 2003.  Docket No. 28, Exh. B (Puopolo Affidavit), Exh. 15.  EDF filed a timely proof of claim dated June 4, 2003, for an unsecured nonpriority claim in the amount of $3,712,251.79, for transactions between December 2001 and March 2003.  Docket No. 28, Exh. B (Puopolo Affidavit), Exh. 13.  Sterling filed a timely proof of claim dated May 13, 2003, for an unsecured nonpriority claim in the amount of $9,622.90, for a transaction on March 18, 2003.  Docket No. 28, Exh. B (Puopolo Affidavit), Exh. 17.

## **DISCUSSION**

Sound Around seeks judgment pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Bankruptcy Rule 7052.  FED. R. BANKR. P. 7052.  Rule 52(c) states:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.  The court may, however, decline to render any judgment until the close of the evidence.  A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

FED. R. CIV. P. 52(c).

Judgment may be entered pursuant to Rule 52(c) where the plaintiff has not established its prima facie case, or where the court determines that the plaintiff's case is outweighed by a preponderance of the evidence.  *Regency Holdings (Cayman), Inc. v. Microcap Fund, Inc. (In re*

*Regency Holdings (Cayman), Inc.),* 216 B.R. 371, 374 (Bankr. S.D.N.Y. 1998) ("[A Rule 52]

motion should be granted where the plaintiff fails to make out a *prima facie* case, or despite a

*prima facie* case, the court determines that the preponderance of evidence goes against the

plaintiff's claim."). *See Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 433 (S.D.N.Y.

2004).

In considering a Rule 52(c) motion, the court "does not draw any special inferences in the

nonmovant's favor . . . or consider the evidence in the light most favorable to the nonmoving

party." *In re Regency Holdings (Cayman), Inc.*, 216 B.R. at 374 (citation omitted). *See* 9 JAMES

WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 52.51 (3d ed. 2008) ("[W]hen issuing a

judgment on partial findings the trial judge is not required to draw any special inferences in favor

of the nonmoving party.").

## *The Trustee's Standing Under Section 544*

When a debtor files for bankruptcy under Chapter 7 of the Bankruptcy Code, a

bankruptcy estate is created, and a Chapter 7 trustee is charged with the administration of the

debtor's estate. 11 U.S.C. §§ 541(a), 704(a). A Chapter 7 trustee's powers to act on behalf of

the bankruptcy estate are broad in scope, to facilitate the effective and efficient administration of

the estate for the benefit of creditors. As one court observed, "[t]he order giving the Trustee full

trustee powers is unquestionably a significant order. Armed with such powers, the Trustee can

take a broad range of actions and has a legal status entitling him to request Bankruptcy Court

approval for many other actions." *Silverman v. Tracar, S.A. (In re American Preferred*

*Prescription, Inc.)*, 255 F.3d 87, 93 (2d Cir. 2001). *See Pineiro v. Pension Benefit Guar. Corp.*,

318 F. Supp. 2d 67, 80 (S.D.N.Y. 2003) (noting the "broad powers granted to the trustee"). A

Chapter 7 trustee's rights include the right to assert control over and administer property of the

8

estate and the right to avoid fraudulent transfers or preferences.  11 U.S.C. §§ 541, 542, 544, 548, 549, 550.  *See Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 55 (2d Cir. 1997) ("The trustee of a bankrupt estate has broad powers under the Bankruptcy Code to avoid certain transfers of property made by the debtor either after or shortly before the filing of the bankruptcy petition.").

At the same time, a Chapter 7 trustee must, like any other plaintiff, establish that he or she has standing to bring a claim.  The doctrine of standing has its roots in Article III of the United States Constitution, which limits the federal courts to deciding cases or controversies.  U.S. CONST. art. III, § 2, cl. 1.  *See Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1091 (2d Cir. 1995).  Standing requires a party to have a "'personal stake in the outcome of the controversy . . . [and] assert his own legal rights and interests.'"  *Wight v. BankAmerica Corp.,* 219 F.3d 79, 86 (2d Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).  For these reasons, as the Second Circuit has found:

> [A bankruptcy trustee's standing] [c]oincides with the scope of the powers the Bankruptcy Code gives a trustee, that is, if a trustee has no power to assert a claim because it is not one belonging to the bankrupt estate, then he also fails to meet the prudential limitation that the legal rights asserted must be his own.

*Shearson Lehman Hutton Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir. 1991).

Section 544(b) of the Bankruptcy Code defines the boundaries of a bankruptcy trustee's standing to bring an action to avoid a fraudulent transfer made by a debtor.  11 U.S.C. § 544(b).  A bankruptcy trustee has the burden of establishing his standing under Section 544(b).  *See Young v. Paramount Commc'ns, Inc. (In re Wingspread Corp.)*, 178 B.R. 938, 945 (Bankr. S.D.N.Y. 1995); *Williams v. Marlar (In re Marlar)*, 252 B.R. 743, 754 (B.A.P. 8th Cir. 2000).

9

Section 544(b)(1) states that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title . . . ." 11 U.S.C. § 544(b)(1).  That is, Section 544(b)(1) requires a trustee to show *both* that there is an actual creditor as to whom the transfer is "voidable under applicable law," *and* that the creditor "hold[s] an unsecured claim that is allowable under section 502 of this title."  11 U.S.C. § 544(b)(1).  As the court found in *In re Wingspread Corp.*:

> In order for a trustee to maintain an action for avoidance of a fraudulent conveyance, the trustee must show that at least one of the present unsecured creditors of the estate holds an allowable claim, against whom the transfer or obligation was invalid under applicable state or federal law.

178 B.R. at 945.  *See MC Asset Recovery, LLC v. Southern Co.*, 2006 U.S. Dist. LEXIS 97034 at *18 (N.D. Ga. Dec. 11, 2006) ("[I]n order to maintain an avoidance action under § 544(b), a trustee must demonstrate the existence of a so-called 'golden' or 'triggering' creditor: (1) an unsecured creditor, (2) who holds an allowable unsecured claim under section 502, and (3) who could avoid the transfers at issue under applicable (i.e., state) law."); *Ries v. Wintz Props., Inc. (In re Wintz Cos.)*, 230 B.R. 848, 859 (B.A.P. 8th Cir. 1999) ("[I]n order to avail himself of the benefits conferred by § 544(b) . . . the Trustee 'must first show that there is an actual unsecured creditor holding an allowable unsecured claim . . . who, under [state] law, could avoid the transfers in question.'" (citation omitted)).

Under Section 544(b)(1), a trustee's standing is "completely derivative of [that] of an actual unsecured creditor" and depends on his alleging and proving that an actual creditor exists that satisfies both of these requirements.  *In re Wingspread Corp.*, 178 B.R. at 945.  *See Belfance v. Bushey (In re Bushey)*, 210 B.R. 95, 100 (B.A.P. 6th Cir. 1997) ("It is often said of § 544(b)

that the trustee 'stands in the shoes' of the creditor, subject to any defenses that could be asserted against the creditor."); COLLIER ON BANKRUPTCY ¶ 544.09[3] (15th ed. rev. 2007) (noting that a trustee "has no greater rights of avoidance than the creditor would have if it were asserting invalidity on its own behalf."). *See also Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 809 (9th Cir. 1994) (referring to a creditor that provides a bankruptcy trustee with standing as a "triggering creditor").

Therefore, in order to establish standing under Section 544(b) to avoid a fraudulent transfer, a trustee must first identify a creditor as to whom the transfer could have been avoided under New York State law. DCL § 270 defines a "creditor" broadly as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.Y. DEBT. & CRED. LAW § 270. The trustee must identify a "triggering creditor" that qualifies under this definition at the time of the fraudulent transfer.

Next, a trustee must show that the triggering creditor is also "a creditor holding an unsecured claim that is allowable under section 502 of this title." 11 U.S.C. § 544(b)(1). Section 101(10)(A) of the Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Section 101(5)(A) of the Bankruptcy Code provides that a "claim" encompasses, among other things, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A). Section 502 of the Bankruptcy Code states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C.§ 502(a). Thus, a creditor that files proof of an unsecured claim that is not objected to is deemed to have an

allowed claim under Section 502 and may qualify as a triggering creditor who "hold[s] an unsecured claim that is allowable under section 502 of this title" in accordance with Section 544. 11 U.S.C. § 544(b)(1).

When a trustee establishes standing to recover a transfer under Section 544(b) based on the existence of a triggering creditor, the trustee may seek to avoid a fraudulent transfer not only for the benefit of that creditor, but also for the benefit of all of the unsecured creditors of the estate. In *Moore v. Bay*, 284 U.S. 4 (1931), the Supreme Court of the United States held that a bankruptcy trustee's right under the Bankruptcy Act of 1898 to avoid a mortgage that was invalid under state law was "to be enforced for the benefit of the estate." *Moore v. Bay*, 284 U.S. at 5. *See In re Acequia, Inc.*, 34 F.3d at 808-09 ("[C]ase law has applied the broad language in *Moore v. Bay* . . . ('for the benefit of the estate') so that the class of unsecured creditors will benefit from any recovery equally even if the action is brought on behalf of only one unsecured creditor so that the entire class of unsecured creditors can benefit."). As a result, as one commentator observes, while a single triggering creditor may provide a trustee with standing, the trustee's standing is "not dependent at all upon the size of that creditor's claim against the debtor. . . . [and] an entire transfer can be set aside even though the creditor's claim is nominal." COLLIER ON BANKRUPTCY ¶ 544.09[5] (15th ed. rev. 2007).

*Whether the Trustee Has Demonstrated the Existence of a Triggering Creditor*

Sound Around argues that the Trustee has not presented evidence sufficient to establish his standing in this case because the Puopolo Affidavit is the only evidence offered by the Trustee to support his standing, and it does not satisfy his burden of demonstrating the existence of a triggering creditor. Amended Mem. in Supp. at 1-2, 5. Sound Around argues:

[Under Section 544,] the Trustee must identify and demonstrate that a particular

12

> creditor had its claim at two distinct points in time: (i) "at the time the transfer occurred" (permitting the unsecured creditor to attack the transfer under state law, in this case Section 273); and (ii) at the time the Petition is filed against the Debtors (permitting the creditor to file a Proof of Claim under Section 501(a) of the Code, which renders the claim an "allowable unsecured claim" if not objected to, under Section 502(a) of the Code).

Amended Mem. in Supp. at 3-4. Sound Around argues that a creditor is a triggering creditor only if it has the same claim at each of these points in time. Amended Mem. in Supp. at 9. Sound Around states that the Proffered Creditors had distinct claims on the Transfer Date and the Petition Date, and that "there is no connection – let alone identity – between (a) the 'unsecured claim' which existed briefly in 1999 and (b) the claim that is 'allowable under Section 502', which relates to *different* purchases and sales occurring years later." Amended Mem. in Supp. at 9 (emphasis in original).

Sound Around further argues that the Proffered Creditors identified in the Puopolo Affidavit were paid in full shortly after the Transfer Date. Amended Mem. in Supp. at 5-6; Reply Mem. at 5. Sound Around contends that the Proffered Creditors ceased to be creditors under New York law when they were paid in full. Amended Mem. in Supp. at 6-7; Reply Mem. at 3. Sound Around asserts that the Proffered Creditors lost their right to bring a fraudulent transfer action under the DCL. Amended Mem. in Supp. at 6-7; Reply Mem. at 3-4.

In addition, Sound Around argues that even if an exception permits a creditor in an open account relationship to maintain its standing after it has been paid in full, such an exception does not apply here. Reply Mem. at 6-7. Sound Around contends that the evidence shows that each of the Proffered Creditors was a creditor of the Debtors at distinct points in time as a result of unrelated "stand alone" transactions separated by a period of between two and four years. Reply Mem. at 5. *See* Reply Mem. at 4-5. Sound Around further argues that the evidence shows that

the Debtors' obligations to the Proffered Creditors on the Transfer Date were "promptly and timely repaid", and does not show that any of the Proffered Creditors contemplated or implemented continuous shipment of goods between the Transfer Date and the Petition Date. Reply Mem. at 6.  Sound Around states that "[t]here is *absolutely no evidence* that there was an 'open account' between [the Proffered Creditors and the Debtors], or anything which could be characterized as a 'continuous debt' or 'credit facility' between the parties."  Reply Mem. at 5 (emphasis in original).

Sound Around concludes that since none of the Proffered Creditors could bring a fraudulent transfer action on its own, the Proffered Creditors do not qualify as triggering creditors, and do not provide a basis for the Trustee's standing to bring his claims.  Amended Mem. in Supp. at 7.

The Trustee argues that each of the Proffered Creditors is a triggering creditor for purposes of establishing his standing under Section 544.  Trustee's Mem. at 3-4.  The Trustee asserts that the Puopolo Affidavit establishes that each Proffered Creditor was a creditor of the Debtors at the time of the Transfer.  Trustee's Mem. at 4 n.5, 8.  In addition, the Trustee asserts that the Puopolo Affidavit establishes that each Proffered Creditor is an unsecured creditor of the Debtors with an allowed unsecured claim.  Trustee's Mem. at 3, 8.  The Trustee argues that "[n]o further examination of the debtor/creditor relationship is required or warranted under Bankruptcy Code § 544(b)."  Trustee's Mem. at 8-9.

The Trustee disputes that Section 544 requires a triggering creditor to hold the same claim on the Transfer Date and the Petition Date:

> Bankruptcy Code §544(b) *only* requires the Trustee to point to a single creditor
> that was a creditor at the time of the Transfer.  It does *not* require that, in order to
> confer standing upon the Trustee, the creditor's claim at the time of the transfer

14

be the same claim that provides the basis for the creditor's allowed claim in the bankruptcy case.

Trustee's Mem. at 5 (emphasis in original).  The Trustee asserts that Congress did not impose such an "identical claim requirement" when it drafted and twice amended Section 544 of the Bankruptcy Code, so that "[i]n neither instance did Congress deem it necessary to increase the Trustee's burden to demonstrate a common claim as urged by Defendant."  Trustee's Mem. at 5, 6.  *See* Trustee's Mem. at 5-6.

Section 544(b)(1) states that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title . . . ."  11 U.S.C. § 544(b)(1).  Thus, in order to satisfy the standing requirements of Section 544, the same creditor that has an allowed unsecured claim on the Petition Date must also have been a creditor of the transferor on the Transfer Date.  *In re Wingspread Corp.*, 178 B.R. at 945 ("[T]he trustee must show that at least one of the present unsecured creditors of the estate holds an allowable claim, against whom the transfer or obligation was invalid under applicable state or federal law.").  *See In re Wintz Cos.*, 230 B.R. at 859 ("[I]n order to avail himself of the benefits conferred by § 544(b) . . . the Trustee 'must first show that there is an actual unsecured creditor holding an allowable unsecured claim . . . who, under [state] law, could avoid the transfers in question.'" (citation omitted)); *G-I Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-I Holdings, Inc.)*, 313 B.R. 612, 632 (Bankr. D.N.J. 2004) ("Under § 544(b), the trustee succeeds to the rights of an unsecured creditor in existence at the commencement of the case who can avoid the transfer or obligation under applicable state law."); *Babitt v. Schwartz (In re Lollipop, Inc.)*, 205 B.R. 682, 687 (Bankr. E.D.N.Y. 1997) ("[T]he Trustee may utilize state fraudulent

15

transfer law to avoid a transfer only if there exists an actual unsecured creditor who could void the transfer under applicable law.").

In other words, a triggering creditor must be the *same creditor* on both the Transfer Date and the Petition Date, but need not hold the *same claim* at these two essential points in time. *See In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 523 (Bankr. S.D.N.Y. 1996) ("It is not necessary 'that the claim held by that creditor at the bankruptcy filing be identical to the one held at the time of the [fraudulent conveyance.]'" (citation omitted)); *In re Bushey*, 210 B.R. at 101 (rejecting the argument that a triggering creditor must assert the identical claim in the bankruptcy case and as the basis for the avoidance action, and noting that "[t]he focus of § 544(b) is on the identity of the *creditor*, not on the historical relationship between that creditor's claim and the debtor." (emphasis in original)).

It is surely true that where a creditor holds a claim that is satisfied in full, "the creditor no longer has a cause of action to recover assets conveyed by the debtor to a transferee." *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.*, 910 F. Supp. 913, 931 (S.D.N.Y. 1995). *See Oparaji v. Madison Queens-Guy Brewer, LLC*, 302 A.D.2d 439, 440; 754 N.Y.S.2d 907, 907 (App. Div. 2d Dep't 2003) ("[I]t is undisputed that the judgment has been satisfied. Accordingly, the plaintiff is no longer a creditor aggrieved by the alleged fraudulent conveyance." (citing cases)). But the payment of the claim does not somehow retroactively alter the creditor's status as a creditor at the time of the transfer.

Illustrating this principle, several courts have found that in the context of a series of transactions, such as an open account relationship, paying a creditor's account down to zero does not terminate its ongoing creditor status. *See In re Bushey*, 210 B.R. at 102 (holding that in an open account relationship, in which a creditor repeatedly extends credit, even though the account

had a zero balance for some period, the creditor remains an "existing creditor" who may challenge a fraudulent conveyance under applicable state law); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. at 523 (stating that where professionals who provided consulting services to a debtor corporation were paid in full, "[the fact that] they were subsequently paid for those particular services is of no consequence because they continued to provide services after the transfer for which they have still not been paid"); *Aluminum Mills Corp. v. Citicorp North America, Inc. (In re Aluminum Mills Corp.)*, 132 B.R. 869, 890 (Bankr. N.D. Ill. 1991) (noting that where a lender extends a revolving line of credit to a borrower, the parties contemplate an ongoing indebtedness "continually . . . due and owing at all times," so that payment of a particular debt does not terminate the ongoing debtor-creditor relationship).

Here, the record shows that each of the Proffered Creditors was a creditor of the Debtors on the Transfer Date. Docket No. 28, Exh. B (Puopolo Affidavit) ¶¶ 2, 7, 13, 18, 24, 29. The record also shows that each of the Proffered Creditors had an allowed unsecured claim as of the Petition Date. Docket No. 28, Exh. B (Puopolo Affidavit), Exh. 13, 15, 17. The record further shows that the Debtors subsequently paid in full the claims held on the Transfer Date by each of the Proffered Creditors. Docket No. 28, Exh. B (Puopolo Affidavit) ¶¶ 8, 19, 30. But this payment does not change the fact that as of the Transfer Date, each of the Proffered Creditors was a creditor of the Debtors. Therefore, the Proffered Creditors were creditors of the Debtors on both the Transfer Date and the Petition Date. Accordingly, they qualify as triggering creditors, and support the Trustee's standing under Section 544 of the Bankruptcy Code.

## **CONCLUSION**

For all of these reasons, and based on the entire record, the Trustee has established his standing to maintain the Adversary Proceeding. Based on the entire record, after consideration

of the submissions and the arguments of counsel, and for the reasons set forth herein, the

Amended Motion to Dismiss is denied.  An order in accordance with this Memorandum Decision

will be entered simultaneously herewith.

Dated: Brooklyn, New York
      July **_25_**, 2008

                                    **_S/Elizabeth S. Stong_**_____
                                    ELIZABETH S. STONG
                                    UNITED STATES BANKRUPTCY JUDGE